(No. 70566

JOSEPH CURRIE, Appellee, v. JOSE LAO, Appellant.

*Opinion filed March 19, 1992.—Rehearing denied June 1, 1992.*

HEIPLE, J., took no part.

Neil F. Hartigan and Roland W. Burris, Attorneys General, of Springfield (Robert J. Ruiz and Rosalyn B. Kaplan, Solicitors General, and Eve Moran, Assistant Attorney General, of Chicago, of counsel), for appellant.

McKeown, Fitzgerald, Zollner, Buck, Hutchison & Ruttle, of Joliet (Timothy J. Rathbun and Gary S. Mueller, of counsel), for appellee.

JUSTICE BILANDIC delivered the opinion of the court:

Plaintiff, Joseph Currie, brought this action in the circuit court of Will County against defendant, Joseph Lao, an Illinois State trooper. Plaintiff's complaint, sounding in negligence, sought recovery from Lao for damages plaintiff sustained when Lao's patrol car collided with plaintiff's pickup truck. Lao's motion to dismiss the action, based upon the common law doctrine of public officials' immunity, was denied. The case was tried to a jury which returned a verdict in favor of plaintiff, reduced by 25% on the basis of plaintiff's comparative negligence. The trial judge entered judgment on the verdict. Lao appealed to the appellate court, arguing that both

sovereign immunity and public officials' immunity barred plaintiff's claim. The appellate court affirmed the judgment in favor of plaintiff. (198 Ill. App. 3d 625.) We granted Lao's petition for leave to appeal (107 Ill. 2d R. 315).

On November 25, 1985, Lao was employed by the Illinois State Police as a trooper with an area of responsibility which included Will County. Lao's assignment on that date was to patrol Interstate 80 and his primary duty was to regulate traffic on that highway. Lao testified that at approximately 8:45 p.m. on that date, the State Police dispatcher for his district directed him to proceed to a reported disturbance on Eastern Avenue in the City of Joliet in Will County. It is unclear precisely what the alleged disturbance involved, something in the nature of a possibly intoxicated person pounding on a trailer. Joliet has its own police force and it was not Lao's normal role to respond to a call within that city. Lao testified that, upon receiving this dispatch, he activated his siren and his flashing lights, exited the interstate, using an exit which he could not recall at trial, and proceeded to the disturbance.

Lao further testified that, while he was en route to the call in Joliet, he missed the turn onto Eastern Avenue and executed a "U-turn" in order to proceed back to Eastern. After Lao completed the "U-turn," he was traveling east on Cass Street, which, at that location, was one-way headed west. Thus, Lao was then proceeding the wrong way on a one-way street. Lao was beginning a left turn off of Cass onto Eastern when he collided with plaintiff's vehicle in the intersection. Plaintiff had been traveling north on Eastern at the time of the collision. Plaintiff testified that he had the green light as he entered the intersection and that he checked the intersection for traffic before proceeding. Lao testified that he was unable to tell if he had the green light as he

began his turn because, Cass being a one-way street, the sole traffic signal for traffic on Cass faced the opposite direction. Plaintiff further stated that he did not see Lao's vehicle until it was approximately 10 to 20 feet away and that Lao's vehicle did not have its lights on.

Lao made contradictory statements during the trial regarding whether or not he had believed that the call to which he was proceeding was an emergency. At one point, Lao admitted that he had not felt it to be an emergency situation. Lao further testified that he drove to the scene of the reported disturbance at a speed close to the speed limit and that he had already been traveling for approximately 15 minutes when the collision with plaintiff occurred.

A City of Joliet police sergeant testified that he was the keeper of records for the police department, including records of calls for assistance to the State Police. The sergeant testified that the Joliet police force normally responds to calls for assistance within the City of Joliet. The sergeant further stated that he found no record reflecting a call for State Police assistance regarding the reported break-in testified to by Lao. On cross, the sergeant admitted that there are other methods by which State Police assistance is requested, which requests would not be reflected in the records he checked. However, no such records were introduced at trial to substantiate Lao's claim that he had been directed to a call in Joliet.

Another State trooper who had been on patrol in Will County on the date in question testified that he overheard a dispatch from State Police district headquarters directing Lao and another trooper to respond to a disturbance in the area of Cass Street in Joliet. This other trooper, who was said to have been sent to the call with Lao, did not testify.

At the close of the evidence, the case was sent to the jury to decide the issues of Lao's negligence and plaintiff's comparative negligence. The question of Lao's immunity from suit was not put before the jury. The jury returned a verdict in favor of plaintiff and assessed his damages at $28,310. The jury further found plaintiff to have been 25% liable for the collision and thus reduced his award to $21,232.50. The appellate court affirmed the judgment, finding that neither sovereign immunity nor public officials' immunity barred plaintiff's action against Lao. Lao argues on appeal to this court that he is immune from plaintiff's suit under both doctrines of immunity.

## I

Lao first contends that the doctrine of sovereign immunity barred plaintiff from pursuing his claim against Lao in the circuit court. Lao argues that plaintiff's suit is in reality a claim against the State because Lao was performing his official duties as a State trooper at the time of the collision. Therefore, because sovereign immunity dictates that the State can be sued only in the Court of Claims, Lao asserts that the Court of Claims has exclusive jurisdiction over the matter and the circuit court was without subject-matter jurisdiction to hear the case. We note that, although Lao did not raise the defense of sovereign immunity in the trial court, no waiver was effected because the issue of subject-matter jurisdiction cannot be waived. *Smith v. Jones* (1986), 113 Ill. 2d 126, 130.

Article XIII, section 4, of the Illinois Constitution of 1970 abolished sovereign immunity "[e]xcept as the General Assembly may provide by law." (Ill. Const. 1970, art. XIII, §4.) Pursuant to this grant of authority, the legislature enacted the State Lawsuit Immunity Act, which provides, in pertinent part:

"Except as provided in *** 'AN ACT to create the Court of Claims ***', *** the State of Illinois shall not be made a defendant or party in any court." Ill. Rev. Stat. 1987, ch. 127, par. 801.

The Court of Claims Act established the Court of Claims and endowed it with the exclusive jurisdiction to hear certain matters, including the following:

"(d) All claims against the State for damages in cases sounding in tort, if a like cause of action would lie against a private person or corporation in a civil suit, *** provided, that an award for damages in a case sounding in tort, other than certain cases involving the operation of a State vehicle described in this paragraph, shall not exceed the sum of $100,000 to or for the benefit of any claimant. The $100,000 limit prescribed by this Section does not apply to an award of damages in any case sounding in tort arising out of the operation by a State employee of a vehicle owned, leased or controlled by the State." (Ill. Rev. Stat. 1987, ch. 37, par. 439.8(d).)

The issue before us is whether plaintiff's claim against Lao, an employee of the State of Illinois, is in reality a claim against the State such that the Court of Claims has exclusive jurisdiction over the action.

The determination of whether an action is in fact a suit against the State turns upon an analysis of the issues involved and the relief sought, rather than the formal designation of the parties. (*Healy v. Vaupel* (1990), 133 Ill. 2d 295; *Robb v. Sutton* (1986), 147 Ill. App. 3d 710, 713.) An action brought nominally against a State employee in his individual capacity will be found to be a claim against the State where a judgment for the plaintiff could operate to control the actions of the State or subject it to liability. *Gocheff v. State Community College* (1979), 69 Ill. App. 3d 178, 184.

A State employee is not immunized by sovereign immunity for his own acts of negligence merely because he was acting within the scope of his employment. (*Gocheff,*

69 Ill. App. 3d at 183.) The issue of when a State employee's on-the-job negligence is immunized has been the focus of numerous divergent, and sometimes contradictory, approaches in the case law. After careful study of these approaches, we conclude that the proper inquiry is to analyze the source of the duty the employee is charged with breaching in committing the allegedly negligent act. Where the charged act of negligence arose out of the State employee's breach of a duty that is imposed on him *solely* by virtue of his State employment, sovereign immunity will bar maintenance of the action in circuit court. (*Healy,* 133 Ill. 2d at 313; *American Family Insurance Co. v. Seeber* (1991), 215 Ill. App. 3d 314, 318.) Conversely, where the employee is charged with breaching a duty imposed on him *independently* of his State employment, sovereign immunity will not attach and a negligence claim may be maintained against him in circuit court. (See *Seeber,* 215 Ill. App. 3d at 318; *Bartholomew v. Crockett* (1985), 131 Ill. App. 3d 456, 462.) In other words, where an employee of the State, although acting within the scope of his employment, is charged with breaching a duty that arose independently of his State employment, a suit against him will not be shielded by sovereign immunity.

This distinction best preserves the spirit of the sovereign immunity doctrine. The legislative grant of sovereign immunity shields the *State* from being hailed into circuit court; it is *not* a blanket grant of immunity for all State employees. The rationale behind extending the immunity to State employees in certain situations is that a suit against that employee could operate to control the actions of the *State,* thereby allowing the State's immunity to be circumvented. (See *Moline Tool Co. v. Department of Revenue* (1951), 410 Ill. 35, 36.) Limiting immunity for a State employee to situations where he breaches a duty imposed on him solely by virtue of his

official position furthers this rationale, for control over the actions and policies of the State could be achieved only by controlling the employee's performance of his "official" actions. A State employee who breaches a duty he owes regardless of his State employment is no more entitled to immunity than is a private individual who breaches that same duty; the mere fact of his State employment should not endow him with heightened protection.

In keeping with these principles, the rule has evolved that claims based on the negligent operation of an automobile by a State employee are generally outside the doctrine of sovereign immunity. (*Bartholomew*, 131 Ill. App. 3d at 462; *Gocheff*, 69 Ill. App. 3d at 184.) The reasoning underlying this rule is apparent: negligence that arises from the ordinary operation of a motor vehicle is based on the breach of the duties every driver owes to every other driver. (*Bartholomew*, 131 Ill. App. 3d at 462-63.) As noted, sovereign immunity attaches only when a State employee is charged with breaching a duty imposed on him solely by virtue of his State employment. Therefore, it will not aid an employee who is charged with breaching only those duties imposed on him as an ordinary driver of a motor vehicle. (*Gocheff*, 69 Ill. App. 3d at 184.) This rule is, of course, not without exceptions: in some circumstances, a State employee's manner of operating a vehicle may be so unique to his employment that a lawsuit aimed at his negligent driving could operate to control the actions and policies of the State. See, *e.g., Campbell v. White* (1991), 207 Ill. App. 3d 541 (sovereign immunity applies where a State law enforcement officer is engaged in a high-speed chase of a suspect and he negligently causes the death of the suspect).

Sovereign immunity was held not to bar an action based on a State employee's negligent driving in *Bartho-*

*lomew,* where the plaintiff brought an action against a truck driver employed by the University of Illinois. The plaintiff's complaint alleged that the defendant, while operating a State-owned vehicle, negligently struck the plaintiff's automobile, causing the plaintiff to sustain personal injuries and property damage. Specifically, the plaintiff charged that the defendant was negligent in speeding, failing to retain control of his vehicle, and otherwise operating his vehicle in a negligent manner. The appellate court, in addressing the defendant's contention that the action must be brought in the Court of Claims, determined that the defendant's governmental employment would not render him immune from suit in the circuit court. The court based its conclusion upon its finding that the duty to the plaintiff breached by the defendant arose not as a result of the defendant's State employment, but rather as a result of the defendant's status as a person operating a motor vehicle on the public highways. *Bartholomew,* 131 Ill. App. 3d at 462-63.

This same result was reached in *Gocheff,* where the plaintiff alleged that the defendant, an employee of the State Community College of East St. Louis, negligently caused a collision between the plaintiff's automobile and the State-owned automobile driven by the defendant. The appellate court held that the negligence charged to the defendant related not to obligations arising solely as a result of the defendant's State employment, but rather to the duties which all automobile drivers owe to one another. Thus, the *Gocheff* court concluded, the action against the defendant employee did not constitute an action against the State and could be maintained in circuit court. *Gocheff,* 69 Ill. App. 3d at 184.

In the instant case, we conclude that the duty Lao is charged with breaching did not arise as a result of his employment as a State trooper, but rather arose as a result of his status as the driver of an automobile on a

public roadway. Lao contends that sovereign immunity attaches because he was operating his vehicle in a manner unique to his position as a State trooper at the time of the collision. However, we find under the facts of this case that Lao was not performing a uniquely governmental function at the time of the collision.

Initially, it should be noted that it is unclear whether or not Lao was even responding to a call for assistance when the collision occurred. It was not the normal and official role of a member of the State Police to respond to a call within the City of Joliet. Moreover, the records of the Joliet police department do not reflect a request for assistance from the State Police regarding the disturbance testified to by Lao. Thus, there is some doubt as to the veracity of Lao's contention that he was proceeding to a call for assistance at the time of the collision.

Even assuming that Lao was in fact proceeding to a call for assistance, it is clear that responding to this call was not a part of Lao's normal and official functions as a State trooper. As a member of the State Police, Lao had no primary responsibility for calls within the City of Joliet. To the contrary, Lao's official duty was the regulation of traffic on Interstate 80. The City of Joliet was the jurisdiction of the Joliet police department and any disturbances occurring within that jurisdiction were the primary responsibility of that department.

Further, Lao's contention that sovereign immunity attaches because he was proceeding to the scene of an emergency is negated by his actions as he traveled to the scene. Lao testified that he drove to the disturbance at a speed close to the speed limit and that he had already been travelling for approximately 15 minutes when the collision occurred. Any "emergency" that allegedly had existed would most certainly have become a non-emergency after such time had elapsed. Lao did not testify that he called for directions or that he requested

that another, closer trooper respond to the call. Moreover, Lao could not even recall what exit he used to leave Interstate 80 when he got the call to proceed to Joliet and there was testimony that Lao did not have his flashing lights activated at the time of the collision. We find that these actions on the part of Lao indicate that his activity at the time of the collision amounted to little more than the routine operation of a motor vehicle on a public street. As stated, we do not believe that sovereign immunity was intended to shield such activity, even when performed by a State employee in the scope of his employment. Lao's manner of operating his vehicle at the time of the collision was not so uniquely related to his employment as a State trooper that he should be immunized for his negligence in carrying it out.

The allegations of plaintiff's complaint against Lao demonstrate our conclusion. Plaintiff's complaint alleged that Lao was negligent in operating his vehicle the wrong way on a one-way street, in failing to maintain a proper lookout, and in failing to maintain control over his vehicle, among other allegations. The duty owed by Lao to refrain from these negligent acts is the same duty owed by all automobile drivers to their fellow motorists. It is this duty which plaintiff claimed was breached. We decline to relieve Lao of this duty merely because he was employed by the State of Illinois.

This case is distinguishable from *Campbell v. White* (1991), 207 Ill. App. 3d 541, where it was held that an action against a State law enforcement officer was barred by sovereign immunity. In that case, the officer, while engaged in the high-speed chase of a suspect, struck the suspect's automobile, causing the suspect's death. Thus, although the officer in *Campbell* was operating a motor vehicle, he was doing so in a manner in which *only* a governmental official is authorized to act. (See *Campbell*, 207 Ill. App. 3d at 555.) The operation of

the vehicle, and the duties accompanying that operation, arose solely as a result of the officer's State employment. Lao, on the other hand, was not performing a function that could not lawfully be performed by other than a governmental official. Rather, Lao was performing the nongovernmental activity of driving a motor vehicle in a routine manner on a public street. State officials and employees are often required to drive automobiles in the course of their employment. We do not believe that the legislature intended that *every* State employee so engaged be granted immunity for his negligence behind the wheel. It is only when the employee's manner of driving is so uniquely related to the employee's official position that a suit against the employee based on his negligent driving could have the effect of controlling the actions or policies of the State. Thus, only in that circumstance will an employee be entitled to shield himself with the *State's* statutory immunity.

The appellate court's opinion in *Campbell* is instructive. In finding that the action against the defendant State trooper was barred by sovereign immunity, the appellate court reasoned as follows:

> "The actions complained of are within defendant's normal and official functions as an agent of the State. And, *while defendant ordinarily would owe a duty to the general public not to drive negligently*, the specific acts of negligence *** alleged revolve around the operation of a State Police vehicle in a manner *uniquely related* to his State employment ***. *** Such an action is only nominally against the individual employee and must be brought in the Court of Claims." (Emphasis added.) (*Campbell*, 207 Ill. App. 3d at 552.)

Thus, crucial to the court's decision in *Campbell* was its finding that the defendant's acts of negligence arose out of his driving his vehicle in a manner uniquely related to his governmental employment. As stated, Lao's opera-

tion of his vehicle at the time of the collision was not uniquely related to his position as a State trooper. Notably, it was on this ground that the *Campbell* court distinguished the appellate court's opinion in the case at bar. *Campbell*, 207 Ill. App. 3d at 555.

Lao argues that this court's decision in the case of *Healy v. Vaupel* (1990), 133 Ill. 2d 295, compels the opposite conclusion in the case at bar. However, we find that this court's decision in the instant case is entirely consistent with this court's decision in *Healy*. In *Healy*, the plaintiff, a student at Northern Illinois University, brought suit in circuit court against two athletic directors, a gymnastics coach and a gymnastics team trainer employed by the university. The plaintiff alleged that the defendants' negligent performance of their job duties caused the plaintiff to be injured while she was participating in university-sponsored gymnastic activities. The defendants moved to dismiss the suit on the basis of lack of subject-matter jurisdiction, claiming that sovereign immunity dictated that the action could be maintained only in the Court of Claims.

Upon our review in *Healy*, we determined that the claim the plaintiff sought to maintain against the four State employees was in fact a claim against the State of Illinois and thus could be brought only in the Court of Claims. Our decision was based upon the fact that the plaintiff charged the defendants with negligence in the discharge of their official employment duties, without any claim that they acted in excess of those duties or in violation of law. We further found that these employment duties which the plaintiff alleged to have been breached by the defendants had no existence outside of the defendants' State employment. As we stated in *Healy*:

"The relationship between the plaintiff and the defendants would not have had a source outside the employment

status of the defendants. Whatever duty was owed by the defendants to the plaintiff existed because of the plaintiff's status as a student and her participation in university-sponsored activities." *Healy*, 133 Ill. 2d at 313.

Thus, the *Healy* decision was grounded upon the finding that the defendants negligently performed functions which were uniquely related to their status as State employees. Had the *Healy* defendants not been government employees, they would have had no duty to supervise the plaintiff's gymnastic activities. Unlike the defendants in *Healy*, Lao had a duty toward plaintiff that existed independently of his position as a State trooper.

Accordingly, we find that, under the particular facts of this case, the duty which plaintiff charged Lao with breaching did not arise out of his status as a governmental employee, but rather out of his status as the driver of an automobile. We therefore hold that plaintiff's negligence action against Lao did not constitute an action against the State and the doctrine of sovereign immunity did not deprive the circuit court of subject-matter jurisdiction in the matter.

## II

We next address Lao's contention that he is immune from plaintiff's suit under the doctrine of public officials' immunity. The common law doctrine of public officials' immunity dictates that public officials are immune from personal liability for their performance of discretionary duties. (*Mora v. State* (1977), 68 Ill. 2d 223, 234.) The doctrine is premised upon the principle that a public decisionmaker should not be subject to personal liability where he makes a decision based upon his perception of the public needs. (*Campbell*, 207 Ill. App. 3d at 553.) The immunity attaches only to conduct by a public official that is discretionary, rather than ministerial, in nature. (*Mora*, 68 Ill. 2d at 233.) Further, it is well established

that public officials' immunity does not apply to every discretionary act by an official but rather only to those acts which are unique to the particular public office. *Gavery v. County of Lake* (1987), 160 Ill. App. 3d 761, 764.

We find that Lao is not entitled to be shielded from plaintiff's suit under the doctrine of public officials' immunity. Lao's decisions, as he proceeded to the alleged call, regarding when to execute turns were not "discretionary" acts, as that term is used in the analysis of this issue. While Lao did in fact make decisions regarding what route to follow, the choices he made were not an exercise of his *official* discretion. To the contrary, Lao's deciding when and where to turn was an activity of a non-official nature. These same choices are made by all drivers of motor vehicles. This was not an activity that is uniquely related to Lao's official duties as a State trooper.

Those cases which have held that an action is barred on the basis of public officials' immunity have involved the defendant official's exercise of his official discretion. In *Mora v. State* (1977), 68 Ill. 2d 223, this court recognized the immunity of a State Department of Transportation employee for his alleged negligence in failing to establish a "no-passing zone" on a certain stretch of Illinois highway. In *Oppe v. Missouri* (1988), 171 Ill. App. 3d 491, public officials' immunity was applied to the actions of several State troopers in forming a road block with their vehicles to apprehend a fleeing suspect. The crucial distinction between these cases and the case at bar is that the defendants therein were charged with negligently performing a function that was uniquely related to their official duties as State employees. This was not the situation in the instant case. Lao was not exercising his official discretion at the time of the collision

168

and he is therefore not entitled to public officials' immunity.

In conclusion, we hold that neither sovereign immunity nor public officials' immunity barred plaintiff's action against Lao in the circuit court of Will County. The judgment of the appellate court is therefore affirmed.

*Judgment affirmed.*

JUSTICE HEIPLE took no part in the consideration or decision of this case.